OPINION OF THE COURT
Angelo Graci, J.
The plaintiff has moved for leave to reargue and to renew a *271 prior motion brought by the New York City Health and Hospitals Corp., one of the defendants, which resulted in a decision of this court dated July 18, 1991 (see, Collins v New York City Health & Hosps. Corp., 151 Misc 2d 266) and order dated August 29, 1991.
Leave to reargue and to renew is granted.
In this wrongful death action, the court held on the prior motion that the plaintiff, as the representative of the estate of an illegal alien from India, could not recover for lost earnings at United States wage rates. The earnings of a person engaged in a criminal or unlawful occupation cannot be used as a basis of recovery in a personal injury action. (See, Murray v Interurban St. Ry. Co., 118 App Div 35.) It is true, the court observed, that the general rule barring a party from coming into court to profit from his own wrong is not rigorously applied in suits brought by illegal aliens when there are sufficient countervailing considerations of equity and public policy. The court then found that the plaintiff made no showing that Anju Koumar, the decedent’s wife, the sole distributee of the estate, and an individual who had herself entered the country illegally, would be permitted to remain here.
On this motion for reargument and renewal, the plaintiff has shown for the first time that Anju Koumar obtained a temporary resident card which became effective December 1, 1987, approximately 10 months after her husband’s death. She has also allegedly obtained a resident alien card (a green card) effective until 2001. (Neither side disclosed to the court the representations made to obtain these cards or the purposes for which they were issued. The court was not informed whether Anju Koumar used the pendency of this lawsuit as a means for obtaining legal residency here.)
Despite the new evidence concerning the distributee’s immigration status, the court finds that under all the circumstances of this particular case, there are insufficient reasons of equity and public policy to allow damages for lost earnings based on United States wage rates. Anju Koumar, the sole distributee, is only 33 years old. There has been no showing that she is incapable of supporting herself. Although presumably capable of working, she is seeking to recover $2,000,000 for future lost wages of the decedent from the city’s underfunded hospital system. There have been layoffs within the hospital system and a consequent inability to provide adequate care for some of the desperate individuals who seek *272 treatment there. The decedent’s earnings were obtained in violation of both the immigration and tax laws of this country. The distributee herself entered the country illegally. When all these matters are weighed, the court sees no reason to drain resources from the hospital system in order to provide a windfall for an able adult.
This court is not alone in its view that an immigrant’s illegal status is relevant to his claim for his future lost earnings. Hernandez v M/V Rajaan (841 F2d 582, reh 848 F2d 498, 500), cited in this court’s prior opinion, ultimately turned on the lack of proof that Hernandez "was about to be deported or would surely be deported”. In Melendres v Soales (105 Mich App 73, 306 NW2d 399), the Court of Appeals of Michigan unanimously held that in a personal injury action where lost earnings were claimed, the plaintiiFs status as an illegal alien was relevant and admissible evidence in the damages phase of the trial. "While the matter of plaintiiFs status as an illegal alien was clearly irrelevant on the question of liability,” the Court of Appeals of Michigan wrote, "it was material and relevant to the issue of damages, specifically, the present value of future lost earnings.” (Melendres v Soales, 105 Mich App 73, 78, 306 NW2d 399, 402, supra.) While in Gonzalez v City of Franklin (137 Wis 2d 109, 403 NW2d 747), the Supreme Court of Wisconsin held that the plaintiff’s status as an illegal alien was properly excluded from his personal injury action because of possible prejudice, the primary ground for the decision was the defendant’s failure to seek a trial bifurcated on the liability and damages phases. (It also appeared that Gonzalez could cure his illegal status.) In Rodriguez v Kline (186 Cal App 3d 1145, 232 Cal Rptr 157), the most recent California appellate case on point, the court held that whenever a plaintiff whose citizenship is questioned seeks to recover for lost future earnings, his status in the United States must be decided as a preliminary question of law. If a plaintiff proven to be an illegal alien cannot show that he has taken steps to correct his deportable condition, "then evidence of the plaintiff’s future earnings must be limited to those he could anticipate receiving in his country of lawful citizenship.” (Rodriguez v Kline, 186 Cal App 3d 1145, 1148, 232 Cal Rptr 157, 158, supra.)
Of course, this court is mindful that in all of these cases, the possibility that the plaintiff would be permitted to remain lawfully in the United States was given weight. If an injured illegal alien or his minor dependents may remain lawfully in *273 the United States, then there is a need for recovery of future earnings at United States rates. But the case at bar is one for wrongful death, and Anju Koumar, the sole distributee of the estate, is a 33-year-old adult. There has been no showing that she is incapable of supporting herself. Moreover, her green card has an expiration date, and a jury should not be permitted to speculate about where she may lawfully reside at future times.
An appellate court of this State has held that the earnings of a person engaged in a criminal or unlawful occupation cannot be used as a basis of recovery for personal injuries. (Murray v Interurban St. Ry. Co., supra.) On this motion, the plaintiff has chosen to ignore the cited case, and he would have this court do the same. However, there being no contrary case of the Appellate Division, Second Department, or of the Court of Appeals, this court is required by the doctrine of stare decisis to follow the precedent set in Murray v Interurban St. Ry. Co. (Mountain View Coach Lines v Storms, 102 AD2d 663.) The court does not find any reason to distinguish Murray v Interurban St. Ry. Co. The plaintiff’s cause of action insofar as it seeks damages for lost earnings at United States rates is founded on the decedent’s violations of both immigration and tax laws. While these laws are difficult to enforce, they are entitled to the same respect given to other laws. On the facts of this particular case, in this wrongful death action where there are no distributees incapable of self-support, no matter of equity or public policy outweighs the circumstance that plaintiff’s claim for decedent’s lost wages at United States rates rests upon illegalities.
Upon reargument and renewal, the court adheres to its prior decision and order.